■ NATIONAL BANK OF NORTH AMERICA, Respondent, v REPUBLIC NATIONAL BANK OF NEW YORK, Appellant. — Judgment, Supreme Court, New York County (Eugene R. Wolin, J.), entered on December 27, 1983, granting

petitioner's application to require respondent to turn over certain moneys, unanimously reversed, on the law and facts, without costs or disbursements, the judgment vacated and the petition dismissed. The appeal from the order of said court entered on December 27, 1983, denying respondent's motion to renew its opposition to the petition, is dismissed as academic, without costs or disbursements. ¶ This proceeding arises out of the activities of one Robert Kruse, an Argentinian citizen and California domiciliary. In June, 1982, Kruse opened a checking account with National Bank of North America (National) and in August, 1982, he deposited a series of checks amounting to $34,387.80 into the account. He was not the payee of any of these checks but the checks were purportedly indorsed to him by the payees and then indorsed by him to National. By early September, 1982, all these funds were withdrawn from the National account by Kruse, together with an overdraft on the account. In mid-September, 1982, Kruse opened a checking account with Republic National Bank of New York (Republic) and proceeded to deposit checks payable to cash, checks with no payees, stolen traveler's checks, or checks payable to others purportedly indorsed to him, amounting in total to $51,390 through October 19, 1982. On that date, Republic closed the account and placed $22,493.69 remaining in the account in a suspense account on the basis that the question of validity of Kruse's indorsements left Republic with a potential liability in excess of that amount. ¶ On February 16, 1983, petitioner obtained an ex parte order of attachment of $41,688.50 in connection with an action not yet commenced against Kruse, seeking $36,298 in damages on causes of action for conversion, breach of warranty of indorsements, lack of title, unjust enrichment and overdraft. As of that date, however, it is clear that petitioner had not suffered losses to that extent and had, in fact, received claims against it amounting to only approximately $11,500. On February 18, 1983, the Sheriff levied against Kruse's Republic account on behalf of the National ex parte order of attachment. National moved to confirm the ex parte order of attachment by order to show cause of February 23, 1983, with the papers to be served upon Kruse, Republic and the Sheriff, and the motion to confirm was later granted without opposition by decision of March 22, 1983, and order entered May 6, 1983. By letter of March 8, 1983 to National, Republic's operation supervisor advised the Sheriff, "[r]egarding * * * the Order of Attachment," that the suspense account contained $22,990.69. ¶ By letter of March 10, 1983 to petitioner, Kruse admitted receiving the summons in the action against him; stated his intention to default in that action; admitted that the checks were not his property but maintained he was not responsible for forgery of any documents and had only opened the account, deposited the checks and had withdrawn the money as a "mere instrument" for an unidentified person who he was doing a favor. Kruse concluded: "In view of all this, you are welcome to obtain the funds from the Republic National Bank and to contact me for [further] information." ¶ By letter of April 29, 1983, Republic's attorney rejected the demand for transfer of amounts in Kruse's suspended Republic account on the basis that "as Mr. Kruse is indebted to [Republic] in an undetermined amount, the Bank cannot make payment at this time." In June, 1983, National commenced this special proceeding to compel Republic to transfer funds in its possession to the Sheriff and further, from the Sheriff to National. The same petition also sought a default judgment against Kruse in the separate action against him, which would be partially satisfied by the funds held by Republic. ¶ By decision dated September 19, 1983, Special Term granted the petition in all respects and granted National's separate motion for a default judgment in its action against Kruse. (Judgment was entered December 27, 1983.) ¶ Republic then moved to renew its opposition on the basis that it had been sued by the holder of checks stolen and forged

by persons unknown and paid out by Republic upon Kruse's indorsements, amounting to $13,625. Such action commenced two days after the return date of National's petition. Thus, it was argued that one of the premises of Special Term's decision, that Republic had received no other demands for the fund, was incorrect and that Republic was, in fact, precisely in the same situation as National except that it had preserved a fund by suspending Kruse's account. In an order entered December 5, 1983, Special Term denied this motion to renew. ¶ The contention by Republic that the levy was void since National failed to commence the proceeding within the 90 days required by CPLR 6214 (subd [e]), and that hence the Sheriff had not obtained actual custody of the funds, is without merit. As far as the bank account was concerned, the Sheriff did not take the property into his actual custody. However, the Sheriff constructively seized the bank account by serving Republic with the attachment order, and the attachment was perfected when the bank notified the Sheriff of the account balance and that the balance was held pursuant to the attachment. The letter from Republic of March 8, 1983 was, as found by Special Term, sufficient to be such an attornment, because it referred to the attachment order and stated the account balance. However, the propriety of the levy did nothing to transfer the title of the *res* to National or to extinguish the right of the garnishee, Republic, to interpose any counterclaim it might have against Kruse expressly acknowledged in CPLR 6214 (subd [d]) (see *Kalman v Neuman,* 102 Misc 2d 662, 665). ¶ Republic, in fact, did raise as a defense to this turnover proceeding a claim against Kruse identical to National's claim on which National obtained a default judgment. Special Term failed to even attempt to ascertain the validity of such counterclaim. ¶ That part of the petition seeking turnover of the fund to the Sheriff should have been denied as unnecessary, since the levy was effective as of the March 8, 1983 letter from Republic. That part of the petition seeking turnover of the *res* from the Sheriff to petitioner should also have been denied by Special Term as premature, because the issue of Kruse's ownership of the fund and Republic's right to recoupment, and perhaps setoff, has yet to be resolved. The question of Kruse's ownership of the fund should most appropriately be decided in an action by claimants against Republic. Some of these claims may not yet have been filed. Petitioner can, of course, renew its application for a turnover at a later date when the issue of Republic's liability for related claims has been determined. Concur — Ross, J. P., Asch, Bloom, Fein and Alexander, JJ.